UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07943-AH-(PVCx) | Date | July 23, 2026 |
| Title | *Chandra Edam et al v. Triller Group, Inc. et al.* | | |

Present: The Honorable Anne Hwang, United States District Judge

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 5)**

Before the Court is an *Ex Parte* Application for a Temporary Restraining Order ("TRO") filed by Plaintiffs Chandra Edam, Vinay Thotakura, and Satish Nannapaneni ("Plaintiffs"). TRO, Dkt. No. 5. Having reviewed Plaintiffs' filings and the relevant law, the Court DENIES Plaintiffs' *ex parte* application for a TRO.

## I. BACKGROUND[1]

Between September 2020 and December 2020, Plaintiffs invested in pre-IPO Space Exploration Technologies Corp. ("SpaceX") interests through Late Stage Management, LLC ("Late Stage") and affiliated Late Stage investment fund vehicles. Compl. ¶ 27, Dkt. No. 1. Plaintiffs understood that their investments would earn them the right to receive and transfer shares of SpaceX stock following the expiration of a lock-up period after the company's initial public offering

[1] The following factual allegations are taken from Plaintiffs' Complaint unless otherwise indicated. For the purposes of this application, the Court treats all well-pled allegations as true.

("IPO"). *Id.* Following SpaceX's IPO, on June 12, 2026, Plaintiffs' online investor portals indicated their respective SpaceX holdings. *Id.* ¶¶ 33, 46, 59. Between June 18, 2026, and June 23, 2026, Late Stage's online investor portal became inaccessible. *Id.* ¶ 34. Upon restoration of the investor portal, Plaintiffs' positions were removed and marked as sold as of September 23, 2024. *Id.* ¶¶ 34, 47, 64. Plaintiffs did not authorize any sale of their SpaceX positions, nor did Plaintiffs receive any distribution from the alleged sale. *Id.* ¶¶ 36–37, 49–50, 66–67.

When Late Stage received money from its investors, Plaintiffs allege on information and belief that it transferred the money to Capital Truth entities, Capital Truth Holdings Ltd. ("Capital Truth") and Capital Truth Holdings LLC. *Id.* ¶ 90. Capital Truth would hold the actual shares of SpaceX until the IPO. *Id.* Once the shares were publicly traded and the lock up period expired, Capital Truth was supposed to distribute shares to Late Stage, who would in turn distribute the shares to Late Stage investors. *Id.*

The Complaint alleges that on June 23, 2026, the same day in which the Late Stage investor portal resumed operation, Triller Group, Inc. ("Triller") and Trendy Reach Holdings Limited ("Trendy Reach"), a wholly owned subsidiary of Triller, entered into a Membership Interest Purchase Agreement with Capital Truth regarding the acquisition of SAC1, a Bahamian vehicle holding indirect ownership of 3,917,185 SpaceX common stock equivalents. *Id.* ¶¶ 83–84. Plaintiffs' SpaceX interests may be included in the SAC1 transaction due to the timing and terms of the SAC1 transaction. *Id.* ¶ 85.

On July 20, 2026, Plaintiffs filed a complaint alleging three causes of action: (1) Declaratory Relief; (2) Constructive Trust; and (3) Conversion arising from the unauthorized sale of their SpaceX interests. *See generally* Compl. On July 21, 2026, Plaintiffs filed the instant application for a TRO, seeking an order enjoining the SAC1 transaction, preventing the transfer or sale of any SpaceX shares or escrowed funds traceable Plaintiffs' SpaceX investments, and preventing the destruction or modification of documents related to Plaintiffs' SpaceX investments or the SAC1 transaction. *See generally* TRO.

## II. LEGAL STANDARD

A party may seek injunctive relief through a TRO or preliminary injunction if it believes it will suffer irreparable harm during the pendency of an

action. *See* Fed. R. Civ. P. 65. Although both are governed by the same substantive standards, a TRO may be issued without notice to the adverse party. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Rule 65(b)(1), the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if two requirements are met: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in the Ninth Circuit also employ a "sliding scale" approach, also known as the "serious questions" test, in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

Additionally, *ex parte* applications are solely for extraordinary relief and are "rarely justified." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). The party filing an *ex parte* application must support its request for relief with evidence "show[ing] that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and "that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. The Ninth Circuit has cautioned that "very few circumstances justify the issuance of an *ex parte* [TRO]." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

## III. DISCUSSION

As a preliminary matter, Plaintiffs have not made a sufficient showing for an *ex parte* application or a TRO without notice to the adverse party under Rule 65(b)(1). *See* Fed. R. Civ. P. 65(b)(1). Plaintiffs have not demonstrated proper service of the Complaint and it is unclear whether the *ex parte* application has been properly served upon Defendants. However, the Court assumes for the purposes of the instant application that Defendants were provided proper notice of the instant application based on counsel's declaration regarding emails sent. Accordingly, the Court addresses the *Winter* factors and the sliding scale approach.

Because this factor is dispositive here, the Court first considers whether Plaintiffs will likely suffer irreparable harm in the absence of a TRO. Plaintiffs allege that "[i]f the SAC1 transaction closes and the SpaceX interests or proceeds are transferred, Plaintiffs may lose the ability to obtain the specific equitable relief they seek," including a constructive trust over specific SpaceX interests and proceeds traceable to their investments in specific SpaceX series. TRO ¶¶ 65, 67. Plaintiffs argue in conclusory fashion that their injury is not readily compensable by money damages because (1) "market conditions" (i.e., SpaceX's stock volatility) may prevent purchase of an equivalent block of SpaceX shares, (2) the disputed SpaceX interests and proceeds may be transferred through foreign entities and accounts, making tracing and recovery difficult, and (3) Triller, the purported buyer of the SpaceX interests, and Capital Truth, the purported seller of the Space X interests, may be insolvent or unable to satisfy a judgment. *Id.* ¶¶ 68–74.

The Ninth Circuit has established that monetary harm typically does not constitute irreparable harm because it can be remedied by damages. *See Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) ("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."); *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). Further, a party "seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

Here, Plaintiffs fail to demonstrate why the purported injury resulting from the planned sale of the disputed SpaceX interests cannot be remedied by monetary

damages and must be remedied by a return of the underlying shares only. "The majority of courts . . . have rejected the notion that monetary damages are not an adequate remedy at law for common stock available on the open market." *Solar Integrated Roofing Corp. v. Ballew*, 2022 WL 902602, at *7 (S.D. Cal. Mar. 28, 2022) (collecting cases). Plaintiffs' only argument is to point to the volatility of the stock price. Further, Plaintiffs do not provide a substantiated basis for their conclusory assertion that Triller and Capital Truth are likely insolvent or likely to be insolvent after the SAC1 transaction. And Plaintiffs fail to allege any other "intangible injuries," such as damage to goodwill, that may qualify as irreparable harm. *See, e.g.*, *Rent–A–Center*, 994 F.2d at 603.

Because Plaintiff has not shown it will likely suffer irreparable harm absent a TRO, the Court will not address the remaining *Winter* factors and finds that Plaintiff has not satisfied the *Winter* test or the sliding scale test.[2] *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (noting that where plaintiffs fail to show irreparable harm absent preliminary injunctive relief, the court need not address the remaining *Winter* factors).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's *ex parte* application for a TRO.

**IT IS SO ORDERED.**

---

[2] The Court notes briefly that Plaintiffs likewise fail to demonstrate a likelihood of success on the merits of their claims due to the unsubstantiated relationship or connection between their SpaceX interests and Capital Truth's purported holding of those interests. The Complaint alleges in conclusory fashion that "Capital Truth has been linked to Late Stage and persons or entities associated with Late Stage," *see* Compl. ¶ 87. But, the allegations supporting this assertion are premised only on information and belief without any supporting facts, *see* ¶¶ 87–91, and Plaintiffs allege only that their interests "*may* be included in the SAC1 transaction" between Capital Truth, Triller, and Trendy Ranch, *see* ¶ 85 (emphasis added).